OPINION
{¶ 1} On February 9, 2004, the Stark County Grand Jury indicted appellant, Terry Copeland, on one count of possession of crack cocaine in violation of R.C. 2925.11.
 {¶ 2} On April 9, 2004, appellant filed a motion to suppress evidence, claiming unreasonable search.[1] A hearing was held on April 14, 2004. The trial court denied said motion.
 {¶ 3} On April 20, 2004, appellant pled no contest to the charge. By judgment entry filed same date, the trial court found appellant guilty. By judgment entry filed June 1, 2004, the trial court sentenced appellant to eleven months in prison.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "The trial court erred in denying the appellant's motion to dismiss and/or suppress evidence based upon a violation of the appellant's constitutional rights against unreasonable search and seizure."
 I {¶ 6} Appellant claims the trial court erred in denying his motion to dismiss and/or suppress evidence. We disagree.
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact.
In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Klein (1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 9} A stop does not have to meet the Terry test if it involves a consensual encounter. A consensual police encounter versus a Terry stop is explained in State v. Taylor (1995), 106 Ohio App.3d 741, 747-748, citations omitted, as follows:
 {¶ 10} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
 {¶ 11} "* * *
 {¶ 12} "The second type of encounter is a `Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. * * * A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.
 {¶ 13} "* * *
 {¶ 14} "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause."
 {¶ 15} Appellant argues the evidence does not support a consensual encounter between himself and the police.
 {¶ 16} In the early morning hours of November 30, 2003, City of Canton Police Officers Jason Gaug and Dan Harless observed appellant in a "high crime, high drug, high prostitution area," walking in the middle of the roadway. T. at 6, 14. When the officers pulled up behind appellant, he continued walking in the middle of the roadway for "maybe a block before he got out of the roadway." T. at 7, 14. The officers decided to stop him and "issue him a blue ticket for walking in the roadway." T. at 7. Clearly these facts establish a reasonable suspicion of criminal behavior and the stop was valid.
 {¶ 17} During the stop, appellant gave Officer Gaug permission to pat him down for weapons. T. at 7, 19. During the patdown, Officer Gaug discovered a pair of gloves in appellant's left front coat pocket. T. at 7. Officer Gaug "pulled out the gloves to make sure there were no weapons in there" and placed them on top of the vehicle. Id. A rock of crack cocaine fell out of the gloves. T. at 7, 21. The officer described the gloves as "a large bulge that I couldn't feel around" which impinged his ability to search for a weapon. T. at 11, 19-20. It was the officers' intent to place appellant in the police cruiser while they wrote out the misdemeanor citation. T. at 11, 13, 15.
 {¶ 18} Appellant testified that although he was walking in the middle of the roadway, he did not give the officers his consent to search him. T. at 23-25.
 {¶ 19} The trial court was faced with deciding which version to accept as the versions contradicted each other. On issues of credibility, we must defer to the trial court's decision. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 20} At the conclusion of the hearing, the trial court denied the motion to suppress, stating the following at 29-30:
 {¶ 21} "Here we have a situation where the officer is engaged in conversation with the Defendant and indicates he's going to check him out for weapons. The Court finds that there was consent to a patdown.
 {¶ 22} "In pursuing that patdown, the officer in feeling that while he understood there probably wasn't a weapon, did not satisfy himself in the patdown, and he needed those out to conduct a patdown. So whether they were removed so he can do the patdown or consensually removed, in this case the Court finds that the Defendant further consented to the removal of the gloves so that the patdown could be completed.
 {¶ 23} "In doing so, the contraband fell from the gloves, was obviously in plain view. So that the interaction with the Defendant, the patdown, removal of the gloves, was done as a result of a consensual interaction between the two parties, and therefore, did not violate the Defendant's rights."
 {¶ 24} Upon review, we find, given the facts of this case, the trial court did not err in denying appellant's motion to suppress.
 {¶ 25} The sole assignment of error is denied.
 {¶ 26} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, J. Boggins, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
[1] The motion is mislabeled as "Motion to Withdraw Plea."